UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE PROPECIA (FINASTERIDE)
PRODUCT LIABILITY LITIGATION

Master File No.: 12-md-2331
(BMC)(PK)

PAUL DAWSON,
Plaintiff,

**DEFENDANTS' MEMORANDUM
OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY
JUDGMENT**

v.

MERCK & CO., INC. and
MERCK SHARP & DOHME CORP.,
Defendants.

No. 1:12-cv-01876-BMC-PK

BUTLER SNOW LLP
Crescent Center
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200

VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 25th Floor
New York, NY 10020
Telephone: (212) 307-5500

***Attorneys for Defendants Merck & Co.,
Inc. and Merck Sharp & Dohme Corp.***

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

I.    Facts relevant to choice of law for substantive claim. ................................. 2

II.   Facts relevant to choice of law on punitive damage claim. ......................... 3

III.  Facts relevant to statute of limitations and remaining claims. .................... 3

LEGAL STANDARD ............................................................................................................... 5

I.    Choice of Law for Substantive Claims and Punitive Damages. .................. 5

A.    Washington's choice-of-law test applies, and pursuant to it, Washington law applies to Mr. Dawson's substantive claims. ........... 5

B.    New Jersey law applies to Plaintiff's punitive damages demand, if any of his substantive claims survives summary judgment; but punitive damages are not recoverable under either state's law ........... 7

II.   Summary Judgment Standard .................................................................... 9

LAW AND ARGUMENT ...................................................................................................... 10

I.    Plaintiff's claims should be dismissed for lack of general and specific causation. ................................................................................................... 10

II.   Mr. Dawson's failure to warn claims are time-barred. ............................. 11

III.  Mr. Dawson cannot establish the requisite reliance for his failure to warn claims; they should be dismissed. ................................................... 14

IV.   Plaintiff cannot recover punitive damages. .............................................. 15

CONCLUSION ....................................................................................................................... 16

CERTIFICATE OF SERVICE .............................................................................................. 17

**TABLE OF AUTHORITIES**

**Cases**

*Algaier v. Bank of America, N.A.*,
  2015 WL 12867009 (E.D. Wash. July 23, 2015) ...................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505 (1986) ...................................................................... 9

*Brown v. Eli Lilly & Co.*,
  654 F.3d 347 (2d Cir. 2011) .................................................................................... 10

*Bryant v. Wyeth*,
  879 F. Supp. 2d 1214 (W.D. Wash. 2012) .............................................................. 7, 8

*Buckley v. Deloitte & Touche USA LLP*,
  888 F. Supp. 2d 404 (S.D.N.Y. 2012) ...................................................................... 9

*Bush v. O'Connor*,
  791 P.2d 915 (Wash. Ct. App. 1990) ........................................................................ 6

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548 (1986) ...................................................................... 9

*D'Amico v. City of New York*,
  132 F.3d 145 (2d Cir. 1998) ................................................................................... 9, 10

*Dawood v. Mercedes-Benz*,
  2016 WL 3960029 (W.D. Wash. July 22, 2016) .................................................... 11, 14

*Gasperini v. Ctr. for Humanities, Inc.*,
  518 U.S. 415 (1996) .................................................................................................. 5

*Green v. A.P.C.*,
  960 P.2d 912 (Wash. 1998) ...................................................................................... 13

*Guillen v. Eli Lilly & Co.*,
  394 F. App'x 814 (2d Cir. 2010) .............................................................................. 6

*Gusvania Home, LLC v. Rice*,
  No. 16 CIV. 2353 (BMC), 2016 WL 6683473 (E.D.N.Y. Nov. 14, 2016) .............. 10

*Hanna v. Plumer*,
  380 U.S. 460 (1965) .................................................................................................. 5

*Hawkes v. Hoffman*,
  105 P. 156 (Wash. 1909) .......................................................................................... 13

*Henricksen v. ConocoPhillips Co.*,
  605 F. Supp. 2d 1142 (E.D. Wash. 2009) ................................................................ 10

*Illinois Tool Works, Inc. v. Seattle Safety, LLC*,
  2010 WL 4668447 (W.D. Wash. Nov. 8, 2010) ...................................................... 13

*In re Mirena IUD Prod. Liab. Litig.*,
  No. 16-2890-CV(L), 2017 WL 4785947 (2d Cir. Oct. 24, 2017) ........................... 11

*In re Mirena IUD Products Liab. Litig.*,
  29 F. Supp. 3d 345 (S.D.N.Y. 2014) ........................................................... 6

*In re Rezulin Prods. Liab. Litig.*,
  MDL No. 1348, 1:00-cv-02843, 2004 WL 2884327 (S.D.N.Y. Dec. 10, 2004) ...................... 11

*In re Rezulin Products Liab. Litig.*,
  392 F. Supp. 2d 597 (S.D.N.Y. 2005) ......................................................... 5

*In re Zyprexa Prods. Liab. Litig.*,
  No. 04–MD–1596, 2009 WL 5062114 (E.D.N.Y. Dec. 10, 2009) .................................... 6

*Johnson v. Spider Staging Corp.*,
  555 P.2d 997 (Wash. 1976) ................................................................... 6

*Keune v. Merck & Co., In re Propecia (Finasteride) Prod. Liab. Litig.*,
  No. 12-CV-2049, 2013 WL 3729570 (E.D.N.Y. May 17, 2013) ..................................... 5

*King v. Beard County*,
  889 P.2d 501 (Wash. Ct. App. 1995) ......................................................... 13

*Laisure-Radke v. Par Pharm., Inc.*,
  426 F. Supp. 2d 1163 (W.D. Wash. 2006) ..................................................... 15

*Luttrell v. Novartis Pharms. Corp.*,
  555 F. App'x 710 (9th Cir. 2014) ........................................................ 14, 15

*Martin v. Humbert Constr., Inc.*,
  61 P.3d 1196 (Wash. Ct. App. 2003) .......................................................... 6

*McKee v. Am. Home Prods. Corp.*,
  782 P.2d 1045 (Wash. 1989) ................................................................. 14

*Menowitz v. Brown*,
  991 F.2d 36 (2d Cir. 1993) .................................................................. 5

*Motus v. Pfizer, Inc.*,
  358 F.3d 659 (9th Cir. 2004) ............................................................... 15

*Newkirk v. ConAgra Foods, Inc.*,
  727 F. Supp. 2d 1006 (E.D. Wash. 2010) .................................................. 10, 11

*Perez v. Wyeth Labs. Inc.*,
  161 N.J. 1 (N.J. 1999) ..................................................................... 16

*Rice v. Dow Chem. Co.*,
  875 P.2d 1213 (Wash. 1994) .................................................................. 6

*Ruggiero v. Warner-Lambert Co.*,
  424 F.3d 249 (2d Cir. 2005) ................................................................ 11

*Smith v. Bayer Corp.*,
  131 S.Ct. 2368 (2011) ....................................................................... 5

*Terhune v. A.H. Robins Co.*,
  577 P.2d 975 (Wash. 1978) .................................................................. 14

*Washington Water Power Co. v. Graybar Elec. Co.*,
    774 P.2d 1199 (Wash. 1989) ............................................................ 12

*West-Fair Elec. Contractors v. Aetna Cas. & Surety Co.*,
    78 F.3d 61 (2d Cir. 1996) ............................................................... 9

*Zenaida-Garcia v. Recovery Sys. Tech., Inc.*,
    115 P.3d 1017 (Wash. Ct. App. 2005) .............................................. 9

**Rules and Statutes**

28 U.S.C. § 1407 .............................................................................. 5

Fed. R. Civ. P. 56 ............................................................................ 9

N.J.S.A § 2A:15-5.12 ...................................................................... 7

N.J.S.A § 2A:15-5.14 ...................................................................... 7

N.J.S.A. §2A:58C-5 ................................................................. 7, 15, 16

Wash. Code Ann. § 7.72.030 ..................................................... 10, 14

Wash. Rev. Code Ann. § 7.72.060 ................................................. 12

**Other Authorities**

Restatement (Second) of Conflicts of Laws (1971) ...................................... 6

## PRELIMINARY STATEMENT

This is a pharmaceutical products liability action brought by Plaintiff Paul Dawson against Merck & Co., Inc. and Merck Sharp & Dohme Corp. (Merck), the manufacturer of Propecia. Propecia (finasteride) is a brand-name, FDA-approved prescription drug indicated for the treatment of male pattern baldness. Plaintiff contends that his use of Propecia beginning in February, 2008 and ending in June, 2008 caused him to sustain *persistent* sexual dysfunction, including decreased libido, reduced sexual sensation, and reduced semen output, as well as testicular pain, depression and anxiety. *See* L.R. 56.1 Statement of Facts ("L.R. 56.1 Stmt.") at ¶4 (Amended Plaintiff Profile Form ("Am. PPF") at II(A)(1), II(B)(1), Ex. 2 to Declaration of Charles F. Morrow ("Morrow Decl.")); L.R. 56.1 Stmt. at ¶11 (Paul Dawson Deposition (8/12/16) ("Dawson Dep.") at 159:13-17, Ex. 1 to Morrow Decl.).

The parties entered a Stipulation of Voluntary Dismissal of Certain Claims in Plaintiff's Complaint on November 22, 2017, wherein Mr. Dawson agreed that some of his claims should be dismissed, including his claims for design defect (both strict liability and negligence), manufacturing defect (both strict liability and negligence), breach of implied warranty, intentional misrepresentation, negligent misrepresentation, Washington Unfair Business Practices/Consumer Protection Act and unjust enrichment. *See* Doc. No. 109. As a result, Mr. Dawson's only remaining claims are for inadequate labeling/prescribing information (failure to warn) under strict liability and negligence under Washington law. *Id.* Merck is entitled to judgment as a matter of law on these remaining claims.

**First,** Mr. Dawson lacks the requisite expert testimony on general and specific causation to sustain his claims.[1]

---

[1] Merck adopts and incorporates by reference its Motion to Exclude Plaintiff's Experts, filed contemporaneously with this Motion.

**Second,** Mr. Dawson's claims are barred by the applicable statute of limitations.

**Third,** even if the claims survive the limitations period, Plaintiff's failure to warn claims fail because there is no evidence that a different warning would have changed his physician's decision to prescribe Propecia to him, and Plaintiff therefore cannot satisfy the elements of his failure to warn claims under Washington law.

**Finally,** should the Court permit Plaintiff's failure to warn claims to proceed, Plaintiff's demand for punitive damages fails as a matter of law.

## STATEMENT OF FACTS

Defendants submitted their Local Civil Rule 56.1 Statement of Undisputed Material Facts, dated November 27, 2017 ("L. R. 56.1 Stmt."), and attached the supporting evidence cited to therein to the Declaration of Charles F. Morrow filed on November 27, 2017. For the Court's convenience, the relevant facts are also stated here.

## I.    Facts relevant to choice of law for substantive claim.

Mr. Dawson is a citizen of Washington and a resident of Vancouver, Washington. L.R. 56.1 Stmt. ¶1 (Complaint and Jury Demand (8/8/12) ("Compl."), Doc. No. 1 at ¶ 1; L.R. 56.1 Stmt. ¶1 (Dawson Dep. at 7:13-20, Ex. 1 to Morrow Decl.). He was prescribed Propecia for treatment of hair loss by Dr. Theresa Mah, a board-certified dermatologist located in Vancouver, Washington. L.R. 56.1 Stmt. ¶2 (Am. PPF at VII(2), Ex. 2 to Morrow Decl.); L.R. 56.1 Stmt. ¶2 (Theresa Mah Deposition (9/7/16) ("Mah Dep.") at 5:20-22; 6:16-19, Ex. 3 to Morrow Decl.). Mr. Dawson purchased Propecia from Walgreens Pharmacy in Vancouver, Washington. L.R. 56.1 Stmt. ¶3 (Am. PPF at VII(2), Ex. 2 to Morrow Decl.).

Mr. Dawson claims that his use of Propecia caused erectile dysfunction, testicular pain, decreased libido, reduced sexual sensation and decreased semen output, as well as depression, anxiety and emotion distress. L.R. 56.1 Stmt. ¶4 (Am. PPF at II(A)(1), II(B)(1), Ex. 2 to

Morrow Decl.). His claimed injury was diagnosed in Vancouver, Washington. L.R. 56.1 Stmt. ¶5 (Am. PPF at II(A)(4), Ex. 2 to Morrow Decl.). This case was initially filed in the Western District of Washington and was subsequently transferred to the JPML. L.R. 56.1 Stmt. ¶ 6 (Compl., Doc. No. 1; Transfer Order (4/17/12), Doc. No. 11).

## II.    Facts relevant to choice of law on punitive damage claim.

Merck & Co. and Merck Sharp & Dohme Corp. are both incorporated under the laws of the state of New Jersey and have their principal places of business in New Jersey. L.R. 56.1 Stmt. ¶7 (Compl. at ¶¶2, 3). Propecia was approved by the FDA for use in the treatment of male pattern hair loss in December, 1997. L.R. 56.1 Stmt. ¶8 (Compl. at ¶6). Decisions related to the labeling and marketing of Propecia were made in the state of New Jersey. L.R. 56.1 Stmt. ¶9 (Charlotte Merritt Curriculum Vitae at 1 (noting Merck's location as Rahway, New Jersey), Ex. 4 to Morrow Decl.). During her deposition, Ms. Merritt discussed the activities that were conducted at Merck's New Jersey location, including the planning and development of Propecia and Propecia labeling, and that the Regulatory Affairs department at Merck was responsible for labeling decisions. L.R. 56.1 Stmt. ¶9 (Charlotte Merritt Deposition (5/19/16) at 15:15–16:13; 19:6-20; 21:9-22:22; 28:5-29:9; 46:11-20, Ex. 5 to Morrow Decl.).[2]

## III.   Facts relevant to statute of limitations and remaining claims.

Mr. Dawson was prescribed Propecia on February 13, 2008, by Dr. Mah. L.R. 56.1 Stmt. ¶10 (Mah Dep. at 17:1-15, Ex. 3 to Morrow Decl.). He took Propecia from February, 2008 to no later than June, 2008. L.R. 56.1 Stmt. ¶11 (Am. PPF at VII(2), Ex. 2 to Morrow Decl.; Dawson Dep. at 159:13-17, Ex. 1 to Morrow Decl.).

---

[2] While these documents, Ex. 4 and Ex. 5, were designated confidential, Defendants have determined that, as to these excerpted portions only, they need not remain confidential here. Defendants do not waive the confidentiality of other portions of Ms. Merritt's deposition, as determinations of confidentiality must be made on a case-by-case basis.

Mr. Dawson began to experience side effects, including erectile dysfunction, within a few days of beginning to take Propecia in February, 2008.  L.R. 56.1 Stmt. ¶12 (Dawson Dep. at 104:5-13, Ex. 1 to Morrow Decl.).  He became concerned when the sexual side effects did not resolve within a few days of stopping Propecia, and was further concerned when the symptoms did not resolve within a week or two after stopping Propecia in June, 2008.  L.R. 56.1 Stmt. ¶13 (Dawson Dep. at 110:19-22, Ex. 1 to Morrow Decl.).  Mr. Dawson's symptoms of reduced ambition, reduced motivation, and reduced energy all began within one week of stopping Propecia.  L.R. 56.1 Stmt. ¶17 (Dawson Dep. at 111:19–112:15, Ex. 1 to Morrow Decl.).

Mr. Dawson researched his symptoms online at PropeciaHelp.com within one to two weeks after stopping Propecia in June, 2008.  L.R. 56.1 Stmt. ¶14 (Dawson Dep. at 111:10-12, Ex. 1 to Morrow Decl.). When researching PropeciaHelp.com within that week or two of stopping Propecia in June, 2008, Mr. Dawson learned that other people were complaining that their side effect symptoms from Propecia were not resolving after they stopped Propecia, and that some complained that their side effects continued after consuming Propecia.  L.R. 56.1 Stmt. ¶15 (Dawson Dep. at 110:22-24, Ex. 1 to Morrow Decl.); L.R. 56.1 Stmt. ¶16 (Dawson Dep. at 199:16-20, Ex. 1 to Morrow Decl.).

Mr. Dawson advised Dr. Mah that he discontinued Propecia after taking it for three months because of the side effects.  L.R. 56.1 Stmt. ¶18 (Dawson Dep. at 195:15-23, Ex. 1 to Morrow Decl.). He further advised Dr. Mah on August 18, 2008, that he experienced decreased libido, impotence, depression and anxiety, which caused him to discontinue Propecia in June, 2008.  L.R. 56.1 Stmt. ¶19 (Dawson Dep. at 196:1-6, Ex. 1 to Morrow Decl.).  Mr. Dawson realized that his injuries were serious "after a few days" of stopping Propecia in June, 2008.  L.R. 56.1 Stmt. ¶20 (Dawson Dep. at 198:2-6, Ex. 1 to Morrow Decl.).  In fact, he believed that

4

Propecia caused him permanent damage before he saw Dr. Mah on August 18, 2008.  L.R. 56.1

Stmt. ¶21 (Dawson Dep. at 197:3-19, Ex. 1 to Morrow Decl.).

## LEGAL STANDARD

**I.      Choice of Law for Substantive Claims and Punitive Damages.**

      **A.      Washington's choice-of-law test applies, and pursuant to it, Washington law applies to Mr. Dawson's substantive claims.**

Federal courts apply federal law to procedural matters.  *Smith v. Bayer Corp*., 131 S.Ct.

2368, 2374 n. 2 (2011); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). When analyzing claims

brought pursuant to state law, a federal court will apply the state's substantive law and federal

procedural rules.  *Gasperini v. Ctr. for Humanities, Inc*., 518 U.S. 415, 427 (1996).

Where a case is transferred by the Judicial Panel on Multidistrict Litigation (JPML)

pursuant to 28 U.S.C. § 1407, the transferee court applies the substantive state law, including

choice-of-law rules, of the jurisdiction in which the action was filed.  *Menowitz v. Brown*, 991

F.2d 36, 40 (2d Cir. 1993); *Keune v. Merck & Co., In re Propecia (Finasteride) Prod. Liab.

Litig*., No. 12-CV-2049, 2013 WL 3729570 (E.D.N.Y. May 17, 2013) (Pohorelsky, M.J.),

*adopted*, June 6, 2013 (Gleeson, J.) (docket entry); *see also In re Rezulin Products Liab. Litig*.,

392 F. Supp. 2d 597, 606-07 (S.D.N.Y. 2005) ("A federal court sitting in diversity normally

applies the choice of law rules of the state in which it is located. When an action is transferred as

part of an MDL, the transferee court applies the choice of law rules of the state in which the

action first was filed.").

Mr. Dawson originally filed suit in the United States District Court for the Western

District of Washington.  *See* Compl., Doc. No. 1 (8/18/2011).  Thereafter, the JPML transferred

the case to this MDL.  *See* Transfer Order, Doc. No. 11 (4/17/2012).  Accordingly, this Court

will apply the substantive law and choice-of-law rules of the State of Washington, where

Plaintiff filed his Complaint. *See, e.g.*, *In re Mirena IUD Products Liab. Litig.*, 29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014) ("An MDL transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed. . . . Because Plaintiff filed this case in the United States District Court for the Northern District of Texas, Texas's choice-of-law rules apply."); *In re Zyprexa Prods. Liab. Litig.*, No. 04–MD–1596, 2009 WL 5062114, at *11 (E.D.N.Y. Dec. 10, 2009) (applying California's choice-of-law rules to MDL member case filed in California), *aff'd sub nom. Guillen v. Eli Lilly & Co.*, 394 F. App'x 814 (2d Cir. 2010) (summary order)).

Washington applies the "most significant relationship" test set forth in Section 145 of the Restatement (Second) of Conflicts of Laws (1971) for personal injury actions. *Johnson v. Spider Staging Corp.*, 555 P.2d 997, 1000-02 (Wash. 1976). The test takes into account the following contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Rice v. Dow Chem. Co.*, 875 P.2d 1213, 1217 (Wash. 1994). "In personal injury cases, the law of the state where the injury occurred applies unless another state has a greater interest in determination of that particular issue." *Martin v. Humbert Constr., Inc.*, 61 P.3d 1196, 1199 (Wash. Ct. App. 2003) (citing *Bush v. O'Connor*, 791 P.2d 915, 918-19 (Wash. Ct. App. 1990)).

The above choice-of-law test points to Washington law for Plaintiff's substantive claims: Plaintiff resided in Washington "at all times relevant to the events described" in his Complaint,

which includes his allegations of injury.  Compl., Doc. No. 1, ¶¶1, 4.  Accordingly, Washington

law applies to Plaintiff's substantive claims.[3]

> **B.      New Jersey law applies to Plaintiff's punitive damages demand, if any of his substantive claims survives summary judgment; but punitive damages are not recoverable under either state's law.**

Since Mr. Dawson's injuries occurred in Washington, but Merck is a New Jersey

corporation principally located in New Jersey, a potential conflict exists as to whether

Washington or New Jersey law applies to his punitive damage demand. As noted, Washington

choice-of-law rules govern here.

This Court must first determine if a conflict exists.  On the face of the states' law, a

conflict may exist.  Washington law "expressly prohibits" punitive damages as a violation of

public policy unless explicitly authorized by statute.  *Algaier v. Bank of America, N.A.*, 2015 WL

12867009, *3 (E.D. Wash. July 23, 2015).  There is no statutory exception for claims under the

Washington Products Liability Act.  *Bryant v. Wyeth*, 879 F. Supp. 2d 1214, n. 5 (W.D. Wash.

2012) ("Washington's prohibition on punitive damages applies to the WPLA claims.").  New

Jersey permits punitive damages, capping them at the greater of $350,000 or five times the

compensatory damages award. N.J.S.A § 2A:15-5.12; 2A:15-5.14 (damages caps).  However,

New Jersey precludes punitive damages in cases involving drugs approved by the FDA, as is the

case here.  N.J.S.A. §2A:58C-5; *see also* L. R. 56.1 Stmt. ¶8 (Plaintiff's admission that Propecia

is FDA approved).  Given the facts relevant to this matter, punitive damages are not recoverable

---

[3]   Dismissal of Plaintiff's substantive claims eliminates the need for a choice-of-law analysis for punitive damages; i.e., if the Court grants summary judgment, Plaintiff cannot recover any damages, including punitive damages.  In the event any substantive claims remain, Merck has addressed choice of law for punitive damages and the fact that Plaintiff's demand for punitive damages fails under the applicable law.

under Washington or New Jersey law; there is no end-result conflict. Thus, punitive damages are not appropriate no matter which state's law applies.

Where a conflict exists, Washington law requires an analysis of what state has the "most significant relationship to the parties and the occurrences with respect to a specific issue." *Bryant*, 879 F. Supp. 2d at 1220. To determine the most significant relationship, the Court will consider the four factors identified above, namely where the injury occurred, where the conduct causing the injury occurred, the residence, place of incorporation and place of business of the parties, and where the relationship between the parties is centered.

The place of injury is Washington. L.R. 56.1 Stmt. ¶5 (Am. PPF at II(A)(4), Ex. 2 to Morrow Decl.) (Plaintiff ingested Propecia in Washington and claims injury in Washington). The domicile and place of business of the parties is balanced between Washington and New Jersey. L.R. 56.1 Stmt. ¶1 (Compl., Doc. No. 1 at ¶ 1; L.R. 56.1 Stmt. ¶1 (Dawson Dep. at 7:13-20, Ex. 1 to Morrow Decl.); L.R. 56.1 Stmt. ¶7 (Compl. at ¶¶2, 3) (residence of Plaintiff is Washington; Merck incorporated and principal place of business in New Jersey). The place where the alleged conduct causing injury occurred and the place where the parties' relationship is centered is New Jersey. Decisions regarding product labeling and marketing were made in New Jersey. L.R. 56.1 Stmt. ¶9 (Charlotte Merritt Curriculum Vitae at 1 (noting Merck's location as Rahway, New Jersey), Ex. 4 to Morrow Decl.); L.R. 56.1 Stmt. ¶9 (Charlotte Merritt Deposition (5/19/16) at 15:15–16:13; 19:6-20; 21:9-22:22; 28:5-29:9; 46:11-20, Ex. 5 to Morrow Decl.) (identifying New Jersey as location for such decisions). Under Washington's choice of law rules, the place where a relationship between the parties is centered is often "the same as the place where the conduct causing the injury occurred." *Bryant*, 879 F. Supp. 2d at 1224; *see also Zenaida-Garcia v. Recovery Sys. Tech., Inc.*, 115 P.3d 1017, 1021 (Wash. Ct. App. 2005)

(Oregon resident fatally injured in Oregon by product designed and manufactured in Washington; Washington law applied because it was the place where the conduct causing injury occurred/where relationship was centered).  Accordingly, these factors favor the application of New Jersey law to Plaintiff's demand for punitive damages.

## II.    Summary Judgment Standard

Summary judgment shall be entered when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotation marks omitted). If the movant does this successfully, the burden shifts, requiring the opposing party to "offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

Specifically, to defeat a motion for summary judgment, the non-movant must come forward with specific evidence showing that a genuine issue of material fact exists.  *West-Fair Elec. Contractors v. Aetna Cas. & Surety Co.*, 78 F.3d 61, 63 (2d Cir. 1996).  A genuine issue of material fact exists only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).   In determining if a genuine dispute of material fact exists, "the court must resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." *Buckley v. Deloitte & Touche USA LLP*, 888 F. Supp. 2d 404, 415 (S.D.N.Y. 2012) *aff'd*, 541 F. App'x 62 (2d Cir. 2013) (citation omitted).  Moreover, mere conclusory allegations,

speculation, or conjecture will not avail a party opposing summary judgment.  *D'Amico*, 132 F.3d at 149.  As a result, "[w]here no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown v. Eli Lilly & Co*., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citation omitted).  *See also Gusvania Home, LLC v. Rice*, No. 16 CIV. 2353 (BMC), 2016 WL 6683473, at *1 (E.D.N.Y. Nov. 14, 2016) (reciting above standard).

## LAW AND ARGUMENT

**I.    Plaintiff's claims should be dismissed for lack of general and specific causation.**

As set forth in Merck's Motion to Exclude Plaintiff's Experts, filed simultaneously with this Motion, the general and specific causation testimony proffered by Plaintiff's experts does not meet *Daubert* standards and should be excluded.  Should the Court exclude such opinions, then Plaintiff has no proof of either general or specific causation, and his failure to warn claims should be dismissed. Indeed, failure of either general or specific causation is sufficient to render judgment to Defendants.

Under Washington law, to succeed on the merits of a failure to warn claim, Mr. Dawson must provide proof of causation of injury.  Wash. Code Ann. § 7.72.030; *Newkirk v. ConAgra Foods, Inc.*, 727 F. Supp. 2d 1006, 1013 (E.D. Wash. 2010) (plaintiff must prove general causation, i.e., "whether the substance at issue had the capacity to cause the harm alleged."); *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1155 (E.D. Wash. 2009) (general causation addresses whether the product at issue is capable of causing the injury in the general population).  That is, Mr. Dawson must prove first that Propecia is capable of causing the injuries he alleges.

Since Mr. Dawson's experts cannot provide reliable and admissible evidence on general causation and those opinions should be excluded here, his claims fail as a matter of law.

*Newkirk*, 727 F. Supp. 2d at 1034.  The same result occurred in *In re Rezulin Prods. Liab. Litig.,* MDL No. 1348, 1:00-cv-02843-LAK-GWG, 2004 WL 2884327 (S.D.N.Y. Dec. 10, 2004) (Kaplan, J.), where defendant objected, on *Daubert* grounds, to the expert testimony on general causation of cirrhosis.   The district court determined that the expert testimony was inadmissible because the expert failed to specify the data upon which he relied or to demonstrate that he applied reliable methods to conclude that Rezulin was capable of causing cirrhosis.  The court thus granted the motion for summary judgment because "plaintiff has offered no admissible evidence of general causation, which is an essential element of her case." *Id.* at *4.  The Second Circuit later affirmed. *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253, 255 (2d Cir. 2005); *see also In re Mirena IUD Prod. Liab. Litig.*, No. 16-2890-CV(L), 2017 WL 4785947, at *1 (2d Cir. Oct. 24, 2017) (Summary Order) (affirming exclusion of plaintiff's experts under *Daubert* and summary judgment for lack of expert proof).

Likewise, with regard to specific causation, Mr. Dawson must have proof that Propecia caused *his* injuries. *Dawood v. Mercedes-Benz*, 2016 WL 3960029, *5 (W.D. Wash. July 22, 2016) (plaintiff must "prove that a failure to warn or instruct proximately caused his injuries."). If the opinions of Plaintiff's case-specific expert, Dr. Goldstein, are properly excluded, then Mr. Dawson does not have proof to make a prima facie case.

Summary judgment is therefore appropriate on Plaintiff's failure to warn claims for lack of admissible, mandatory evidence of causation.

## II.    Mr. Dawson's failure to warn claims are time-barred.

Even if Mr. Dawson's claims cross the causation threshold, his claims are nevertheless time barred. Washington has a three-year statute of limitations for product liability/personal

injury actions.[4]  *See* Wash. Rev. Code Ann. § 7.72.060 ("Subject to the applicable provisions of chapter 4.16 RCW pertaining to the tolling and extension of any statute of limitation, no claim under this chapter may be brought more than three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause.").  Mr. Dawson knew or should have known of his injury and its cause more than three years before he filed suit.  Accordingly, Mr. Dawson's remaining claims for failure to warn are time-barred.

Plaintiff filed his Complaint on August 18, 2011.  Compl., Doc. No. 1.  Therefore, his claims are untimely under Washington law if they accrued before August 18, 2008.  The facts here establish that Mr. Dawson knew of his alleged injury and its purported cause in June or July, 2008, and his claims filed more than three years later are too late.

- Mr. Dawson took Propecia from February, 2008 to no later than June, 2008.  L. R. 56.1 Stmt. at ¶11.

- Mr. Dawson became concerned when the side effects did not resolve within a few days of discontinuing Propecia, and became more concerned when the symptoms did not resolve within a week or two after stopping Propecia in June, 2008.  L. R. 56.1 Stmt. at ¶13.

- Mr. Dawson researched his symptoms online at PropeciaHelp.com within one to two weeks after stopping Propecia in June, 2008.  L. R. 56.1 Stmt. at ¶14.

- When researching PropeciaHelp.com within a week or two of stopping Propecia in June, 2008, Mr. Dawson learned of others who were complaining that their side effects continued after consuming Propecia.  L. R. 56.1 Stmt. at ¶¶15-16.

---

[4]   The Washington Product Liability Act (WPLA) "creates a single cause of action for product-related harms that supplants previously existing common law remedies."  *Washington Water Power Co. v. Graybar Elec. Co.*, 774 P.2d 1199, 1207 (Wash. 1989).

- Mr. Dawson advised Dr. Mah on August 18, 2008 that he had experienced decreased libido, impotence, depression and anxiety, which caused him to discontinue Propecia in June, 2008.  L. R. 56.1 Stmt. at ¶18.

- Mr. Dawson believed that his injuries were serious "after a few days" of discontinuing Propecia in June, 2008.  L. R. 56.1 Stmt. at ¶20.

- Mr. Dawson believed that Propecia caused him permanent damage before he saw Dr. Mah on August 18, 2008.  L. R. 56.1 Stmt. at ¶21.

These facts lead to the inescapable conclusion that Mr. Dawson believed he was permanently injured and believed that Propecia was the cause more than 3 years before he filed his Complaint.  He was so concerned that he conducted research around June 2008 that led him to a website where others detailed their complaints about the side effects of Propecia and their claims that the effects lasted after discontinuation.

"The general rule in Washington is that when a plaintiff is placed on notice of some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm. The plaintiff is charged with what a reasonable inquiry would have discovered." *Green v. A.P.C.*, 960 P.2d 912, 916 (Wash. 1998). "[O]ne who has notice of facts sufficient to put him upon inquiry is deemed to have notice of all acts which reasonable inquiry would disclose." *Id*. (quoting *Hawkes v. Hoffman*, 105 P. 156, 126 (Wash. 1909)).  As noted in *Illinois Tool Works, Inc. v. Seattle Safety, LLC*, 2010 WL 4668447, *5 (W.D. Wash. Nov. 8, 2010) quoting *King v. Beard County*, 889 P.2d 501, 504 (Wash. Ct. App. 1995):

> **The limitation period begins to run when the factual elements of a cause of action exist and the injured party knows or should know they exist, whether or not the party can then conclusively prove the tortious conduct has occurred.** A smoking gun is not necessary to commence the limitation period. **An**

13

**injured claimant who *reasonably suspects* that a specific wrongful act has occurred is on notice that legal action must be taken.** At that point, the potential harm with which the discovery rule is concerned—that remedies may expire before the claimant is aware of the cause of action—has evaporated. The claimant has only to file suit within the limitations period and use the civil discovery rules within that action to determine whether the evidence necessary to prove the cause of action is obtainable. If the discovery rule were construed so as to require knowledge of conclusive proof of a claim before the limitations period begins to run, many claims would never be time-barred.

(italics in original, other emphasis added).

Given Mr. Dawson's testimony, he was required to act diligently to pursue his claims here. He failed to do so within the mandatory three year window.  As a result, his claims are time-barred.

**III.    Mr. Dawson cannot establish the requisite reliance for his failure to warn claims; they should be dismissed.**

If Mr. Dawson can survive his lack of causation testimony and the bar of the statute of limitations, his failure to warn claims fail on the merits as a matter of law.

Plaintiff's failure to warn claims are governed by the WPLA.  *See* Wash Rev. Code § 7.72.030.  Mr. Dawson must "prove that a failure to warn or instruct proximately caused his injuries." *Dawood v. Mercedes-Benz*, 2016 WL 3960029, *5 (W.D. Wash. July 22, 2016). While causation is usually a jury question, "it may be decided by a judge when reasonable minds could reach but one conclusion." *Luttrell v. Novartis Pharms. Corp.*, 555 F. App'x 710, 711 (9th Cir. 2014).  Such is the case here.

Washington applies the learned intermediary doctrine to claims arising from the use of prescription medication.  *See*, *e.g.*, *Terhune v. A.H. Robins Co.*, 577 P.2d 975, 978 (Wash. 1978); *McKee v. Am. Home Prods. Corp.*, 782 P.2d 1045, 1049 (Wash. 1989).  As a result, Mr. Dawson must establish that a different warning would have altered Dr. Mah's conduct in prescribing Propecia to him.  *Luttrell*, 555 F. App'x at 710 ("When a plaintiff brings an insufficient warning

claim against a drug company, the learned intermediary doctrine requires a showing that the prescribing physician, not the patient, would have taken 'a different course of action' if better warnings had been issued."), quoting *Laisure-Radke v. Par Pharm., Inc.*, 426 F. Supp. 2d 1163, 1174 (W.D. Wash. 2006); *see also Motus v. Pfizer, Inc.*, 358 F.3d 659 (9th Cir. 2004) (granting summary judgment on failure to warn claim where there was no evidence that different warning would have changed the prescriber's decision).

Here, there is no proof that Dr. Mah would have changed her prescribing decision if a different warning had been provided. Dr. Mah was deposed, and Plaintiff never asked if she would have changed her mind to prescribe Propecia if the warning had been different. It is Plaintiff's burden to establish this fact in order to make a prima facie case. *Luttrell*, 555 F. App'x at 710. Given the complete lack of evidence on a requisite element of his failure to warn claims, summary judgment is warranted here.

## IV.    Plaintiff cannot recover punitive damages.

In the event that Plaintiff's failure to warn claims survive for trial, he cannot pursue a recovery of punitive damages. As noted above, New Jersey law applies to this issue. *See*, *infra*, at 7-9.

Mr. Dawson admits that Propecia has been FDA-approved for use to treat male pattern hair loss since 1997. Compl. at ¶6. The FDA approval pre-dates Mr. Dawson's use of Propecia.

The New Jersey Products Liability Act ("NJPLA") provides that punitive damage liability may not be imposed on a manufacturer where its drug has been approved or licensed by the FDA. Section 2A:58C-5(c) of the NJPLA reads:

> Punitive damages **shall not be awarded** if a drug or device or food or food additive which caused the claimant's harm **was subject to premarket approval or licensure** by the federal Food and Drug Administration under the "Federal Food, Drug, and Cosmetic Act," 52 Stat. 1040, 21 U.S.C. § 301 et seq. or the "Public Health Service Act," 58 Stat. 682, 42 US.C. § 201 et seq. **and was**

**approved or licensed;** or is generally recognized as safe and effective pursuant to conditions established by the federal Food and Drug Administration and applicable regulations, including packaging and labeling regulations. . . . [] For purposes of this subsection, the terms "drug", "device", "food", and "food additive" have the meanings defined in the "Federal Food, Drug, and Cosmetic Act."

(emphasis added); *see, e.g., Perez v. Wyeth Labs. Inc.*, 161 N.J. 1 (N.J. 1999). Here, punitive damages are prohibited under the plain terms of Section 2A:58C-5(c).[5] Therefore, Mr. Dawson's demand for punitive damages should be dismissed.

## CONCLUSION

Based upon the foregoing, Defendants respectfully request that their motion for summary judgment be granted because Mr. Dawson lacks the required causation proof, because his claims are time-barred and because he has adduced no proof that Dr. Mah would have altered her prescribing decision if a different warning had been given. Defendants respectfully request that judgment be entered for them. Should any of Mr. Dawson's claims survive summary judgment, his punitive damage demand should be dismissed. Defendants request this and all other relief, both general and special, to which the Court deems them entitled.

Dated: Memphis, Tennessee
November 27, 2017

Respectfully submitted,

/s/ Charles F. Morrow
Charles F. Morrow, Esq.
BUTLER SNOW LLP
Crescent Center
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: chip.morrow@butlersnow.com

---

[5] As noted, Washington expressly prohibits punitive damages for WPLA claims.

Matthew T. McLaughlin, Esq.
Michael A. Guerra, Esq.
VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 25th Floor
New York, NY  10020
Telephone:  (212) 307-5500
Facsimile:  (212) 307-5598
Email:  mtmclaughlin@venable.com
Email:  maguerra@venable.com

***Attorneys for Defendants Merck & Co.,
Inc. and Merck Sharp & Dohme Corp.***

## CERTIFICATE OF SERVICE

I, Charles F. Morrow, one of the attorneys for Merck & Co., Inc. and Merck Sharp & Dohme Corp. do hereby certify that I have this day caused the foregoing to be electronically filed with the Clerk of the Court using the ECF system which sent notification of such filing to all registered attorneys.

SO CERTIFIED this, the 27th day of November, 2017.

 *s/ Charles F. Morrow*
Charles F. Morrow