UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
IN RE PROPECIA (FINASTERIDE)
PRODUCT LIABILITY LITIGATION

THIS DOCUMENT APPLIES TO:

PAUL DAWSON,

                Plaintiff,

     v.

MERCK & CO., INC. and MERCK SHARP &
DOHME CORP.,

                Defendants.
------------------------------------------------------------- x

Master File No.: 12-md-2331 (BMC)(PK)

Case No.: 1:12-cv-01876 (BMC)(PK)

# MEMORANDUM OF LAW IN SUPPORT OF
# PROPOSED INTERVENOR REUTERS' MOTION TO INTERVENE AND UNSEAL

Katherine M. Bolger
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone:  (212) 489-8230
Fax:      (212) 489-8340
katebolger@dwt.com

Gail Gove
THOMSON REUTERS
333 Bay Street, Suite 400
Toronto, Ontario, Canada
(416) 687-7500
Gail.gove@thomsonreuters.com

*Attorneys for Movant/Intervenor
Reuters America LLC*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .............................................................................................................................. 2

    A. The Parties ............................................................................................................. 2

    B. The Sealing Order ................................................................................................. 3

    C. Plaintiff's Mis-Redacted Brief And Reuters' Article ............................................ 4

ARGUMENT ................................................................................................................................... 4

    I. AS A NEWS ORGANIZATION, REUTERS HAS THE RIGHT TO INTERVENE ........................................................................................................... 4

    II. THE REDACTED BRIEF SHOULD BE UNREDACTED AND THE SEALED EXHIBITS SHOULD BE UNSEALED .................................................. 6

        A. There Is A Strong Presumption of Openness For Judicial Documents ......................................................................................... 6

        B. The Redacted Brief and Sealed Exhibits Are "Judicial Documents" ......... 7

        C. Under The First Amendment, There Is A Strong Presumption of Access To The Sealed Exhibits and Redacted Brief .................................. 9

        D. The Court's Sealing Order Is Not An Adequate Substitute For The On-The-Record Findings Mandated By The First Amendment ............... 10

        E. Any Reasons That Could Be Proffered For Sealing Do Not Outweigh The Presumption of Openness ................................................ 12

CONCLUSION ............................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Application to Unseal 98 Cr. 1101(ILG)*,
  891 F. Supp. 2d 296 (E.D.N.Y. 2012) ...................................................................................13

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
  814 F.3d 132 (2d Cir. 2016).............................................................................................6, 7, 10

*Brown v. Maxwell*,
  929 F.3d 41 (2d Cir. 2019)............................................................................................. passim

*Dandong v. Pinnacle Performance Ltd.*,
  No. 10 Civ. 8086(JMF), 2012 WL 621746 (S.D.N.Y. Dec. 3, 2012).......................................10

*E.E.O.C. v. Nat'l Childrens Center, Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998) ................................................................................................5

*New York ex rel. Khurana v. Spherion Corp.*,
  15-cv-6605(JMF), 2019 WL 3294170 (S.D.N.Y. Jul. 19, 2019)..................................7, 10, 11

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*,
  97 F. Supp. 3d 485 (S.D.N.Y. 2015).........................................................................................8

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d. Cir. 2006)..................................................................................... passim

*Nixon v. Warner Communications, Inc.*,
  435 U.S. 589 (1978)..................................................................................................................6

*In re Pineapple Antitrust Litig.*,
  No. 04 md 1628 (RMB)(MHD), 2015 WL 5439090 (S.D.N.Y. Aug. 10, 2015) .................4, 5

*Turner Network Sales, Inc. v. DISH Network L.L.C.*,
  No. 17-cv-7499(RA), 2019 WL 147372 (S.D.N.Y. Jan. 9, 2019)...........................................10

*U.S. v. Graham*,
  257 F.3d 143 (2d Cir. 2001)....................................................................................................10

*Under Seal v. Under Seal*,
  273 F. Supp. 3d 460 (S.D.N.Y. 2017)............................................................................. passim

*United States v. Amodeo*,
  71 F.3d 1044 (2d Cir. 1995).............................................................................................6, 7, 8

*United States v. Erie Cty., N.Y.*,
   763 F.3d 235 (2d Cir. 2014) ..........................................................................................12

*United States v. Erie Cty.*,
   No. 09-cv-849S, 2013 WL 4679070 (W.D.N.Y. Aug. 30, 2013), *rev'd on
   other grounds*, 763 F.3d 235 (2d Cir. 2014) ...................................................................5

**Other Authorities**

Federal Rules of Civil Procedure
   24 .....................................................................................................................................4
   24(a) ................................................................................................................................5
   24(b) ................................................................................................................................5

U.S. Const. amend. I ................................................................................................... *passim*

Non-party Reuters America LLC ("Reuters") respectfully submits this memorandum of law in support of its motion to intervene and for an order removing the redactions on the brief in Docket Entry 113 and unsealing the corresponding exhibits in Docket Entry 115 filed by Plaintiff Paul Dawson ("Plaintiff") in the above-captioned case.

## PRELIMINARY STATEMENT

The right of public access to judicial documents is "firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d. Cir. 2006). Without this access, the public would have "no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). As a result, in order for a court to seal judicial documents, parties must make compelling arguments in favor of sealing, which the court must evaluate on a document-by-document basis in light of the strong presumption of public access. Yet in a sharp divergence from this well-established process, documents in this matter – a case concerning the warning labels on the drug, Propecia – have remained under seal for almost two years with no apparent justification from the parties and no analysis by the Court. This is clearly improper.

Reuters now seeks to intervene to remove the redactions on the motion filed by Plaintiff in Docket Entry 113 (the "Redacted Brief" or the "Brief") and unseal the twenty-eight sealed exhibits filed in Docket Entry 115 in support of that motion (the "Sealed Exhibits" or the "Exhibits"). These documents are important not only to Reuters' own investigative reporting about Propecia but also to members of the public at large who continue to take this medication and doctors who continue to prescribe it to patients. This is especially so because mis-redactions in the Brief – on which Reuters has reported – indicate that the Sealed Exhibits (including both the inadvertently disclosed text in the Redacted Brief and the broader, undisclosed Exhibits themselves) are highly relevant to the key issues in this litigation. Because the parties have not offered *any* reasons for

sealing these documents, let alone a showing of a "substantial probability of harm to a compelling interest," and because the Court never made findings "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest," *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 469 (S.D.N.Y. 2017) (internal quotations omitted), Reuters' motion should be granted. The redactions on the Redacted Brief should be removed and the Sealed Exhibits should be unsealed.

## BACKGROUND

### A. The Parties

Intervenor Reuters is an international news agency with offices in New York. Since 2018, reporters at Reuters have been conducting an investigation into the negative side effects of the prescription drug, Propecia (and the generic equivalent, finasteride), used to treat male pattern baldness. On September 11, 2019, Reuters published an article titled "Court let Merck hide secrets about a popular drug's risks" (the "Article"), *see* Decl. of Katherine M. Bolger, Ex. A, which explored these side effects. The Article told the story of John Pfaff, a man who took Propecia for four years and continued to suffer sexual dysfunction and depression for a year after quitting the drug, until he committed suicide in March of 2013.

Defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp. (together "Merck") are the manufacturers of Propecia. Beginning in 2011, over one thousand individuals sued Merck alleging that their use of Propecia caused them to suffer persistent sexual dysfunction and that Merck had not warned them of this risk. In 2012, the cases were consolidated into a multi-district litigation and transferred to the Eastern District of New York. *See Propecia Finasteride Prod. Liab. Litig.*, 12-md-2331 (E.D.N.Y. 2012). In 2016, the court selected four "bellwether" cases to represent the first tranche of plaintiffs. The instant litigation, *Dawson v. Merck*, is one such bellwether case.

**B.     The Sealing Order**

After both parties conducted extensive discovery, Merck filed a motion for summary judgment and associated motion *in limine* to preclude the testimony of three of Plaintiff's experts. *See* Docket Entry Nos. 110-12.  Prior to Merck filing these motions, however, the parties filed a joint motion for leave to file under seal the exhibits in support of Merck's *Daubert* and dispositive motions.  *See* Docket Entry. No. 108.[1]  The Court not only granted the parties' motion but also issued an order as to future motions for leave to file documents under seal.  The Court's order stated:

> [T]here is no need to file a separate motion for leave to file exhibits under seal in support of motions in these first four cases comprising the First Bellwether Tranche, particularly when the motion to seal does not provide a reason apart from a generic assertion that the exhibits contain confidential information subject to the Stipulation and Order.  Going forward, for these four cases, the parties shall not file separate motions to file exhibits under seal.  Instead, the parties shall file the exhibits under seal in the first instance, and, in the final paragraph of the motion to which the sealed exhibits are attached, the filing party must explain why the exhibits should remain under seal.

*See* Order Granting Docket Entry No. 108.  Accordingly, when Plaintiff filed his response in opposition to Merck's *Daubert* motion, he filed twenty-eight of the attached exhibits under seal and the portions of the brief discussing these exhibits were heavily redacted.  *See* Docket Entry Nos. 113, 115.  Despite the Court's order, nothing in the publicly filed version of the Redacted Brief explained why the redactions were proper or why the Sealed Exhibits should remain under seal.  In addition, there is no public order in which the Court assessed Plaintiff's arguments or made any findings as to why sealing was appropriate.  Because the sealing was not challenged prior to the case's dismissal in September 2018, the redactions in the Redacted Brief persist and the Sealed Exhibits remain under seal.

---

[1] The parties' motion was itself filed under seal and remains sealed today.

3

### C. Plaintiff's Mis-Redacted Brief And Reuters' Article

Although the Redacted Brief contained extensive redactions related to the Sealed Exhibits, Reuters discovered that Plaintiff misapplied these redactions, and the redacted text is visible to anyone who downloads the Brief from the docket and copies the redacted text into a new Microsoft Word document. *See* Article at 6 ("The passages of the motion pertaining to the study were redacted. However, Reuters was able to view the blacked-out material after copying it from a digital version of the motion and pasting it into a document in a different format."). Reuters' Article, therefore, contains information garnered from the Redacted Brief. For example, the Article notes that one Sealed Exhibit referenced in the Redacted Brief is an internal Merck memorandum, which states that twenty-three men in a Merck internal study experienced sexual side effects from Propecia during the final three years of the study. Merck failed to include this information on the Propecia label. *See id.* In another Sealed Exhibit discussed in the Redacted Brief and quoted in the Article, a Merck executive refers to language on the Propecia label as "totally misleading" based on internal study results. *Id.* But the Sealed Exhibits themselves – including both information referenced in the Redacted Brief and other information not alluded to in the Brief – remain inaccessible to the public.

Reuters, as an intervenor, therefore seeks to move this Court to remove the already publicly available redactions from the Redacted Brief and unseal the Sealed Exhibits in full.

### ARGUMENT

### I.   AS A NEWS ORGANIZATION, REUTERS HAS THE RIGHT TO INTERVENE

As a threshold matter, courts in this Circuit have long recognized that pursuant to Federal Rule of Civil Procedure 24, news organizations have the right to intervene in order to seek access to sealed judicial records. *In re Pineapple Antitrust Litig.*, No. 04 md 1628 (RMB)(MHD), 2015 WL 5439090, at *1 (S.D.N.Y. Aug. 10, 2015) ("[C]ourts have repeatedly recognized that members

4

of the press (and other non-parties) may seek to pursue modification of confidentiality orders that have led to the sealing of documents filed with the court, and that the appropriate procedural mechanism to do so is a motion to intervene."). As the Southern District of New York held, "[w]hether deemed an intervention as of right under Rule 24(a) or a permissive intervention under Rule 24(b), intervention by the press—a step preliminary to determining whether any sealed documents should be disclosed—should be granted absent some compelling justification for a contrary result." *Id.*

Although *Dawson v. Merck* settled in 2018, Reuters' motion is still timely because courts grant intervention long after litigation has concluded. *See id.* at *2 ("There is no legal authority of which we are aware . . . to the effect that there is a deadline by which such a journalistic request for access to documents must be asserted, and certainly no requirement that the application be made before the lawsuit is closed."); *United States v. Erie Cty.*, No. 09-cv-849S, 2013 WL 4679070, at *6 (W.D.N.Y. Aug. 30, 2013), *rev'd on other grounds*, 763 F.3d 235 (2d Cir. 2014) ("[I]ntervention for the purpose of challenging confidentiality orders is permissible even years after a case is closed."); *see also E.E.O.C. v. Nat'l Childrens Center, Inc.*, 146 F.3d 1042, 1047 (D.C. Cir. 1998) ("There is a growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated.") (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 (2d Cir. 1994)). Accordingly, because there is no compelling reason for why Reuters should not be permitted to intervene at this time, the Court should grant its motion to intervene.

## II. THE REDACTED BRIEF SHOULD BE UNREDACTED AND THE SEALED EXHIBITS SHOULD BE UNSEALED

This Court should also grant Reuters' motion to remove the redactions on the Redacted Brief and unseal the Sealed Exhibits because the parties failed to demonstrate and this Court failed to find that there was good cause to redact and seal them.

### A. There Is A Strong Presumption of Openness For Judicial Documents

In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978), the United States Supreme Court explained that there is a "general right to inspect and copy public records and documents, including judicial records and documents." This presumption of access is "based on the need for federal courts, although independent . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Amodeo*, 71 F.3d at 1048. The presumption is derived from two sources: the common law and the First Amendment to the United States Constitution.

Under common law, in order to determine whether the presumption of access applies, a court must engage in a two-part inquiry. First, it must determine whether the document sought to be unsealed is a "judicial document." *Lugosch*, 435 F.3d at 119. If it is, the court must then determine the weight of the presumption. *Id.* The weight is a function of: "(1) the role of the material at issue in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts, balanced against competing considerations such as the privacy interests of those resisting disclosure." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (internal quotations omitted). Importantly, the weight of the presumption is unaffected by the reason a party has for seeking the records. *See Amodeo*, 71 F.3d at 1050. In other words, while "[i]t is true that journalists may seek access to judicial documents for reasons unrelated to the monitoring of Article III functions . . . assessing

the motives of journalists risks self-serving judicial decisions tipping in favor of secrecy." *Id.* Where documents "directly affect an adjudication or are used to determine litigants' substantive legal rights, the presumption of access is at its zenith, and thus can be overcome only be extraordinary circumstances." *Bernstein*, 814 F.3d at 142.

In addition, the First Amendment "gives rise to a higher burden on the party seeking to prevent disclosure than does the common law presumption." *Lugosch*, 435 F.3d at 126. Courts use two approaches to determine whether the First Amendment presumption applies. *Under Seal*, 273 F. Supp. 3d at 468. First, courts consider whether the documents are those that "have historically been open to the press and general public" and "for which public access plays a significant role in the functioning of the particular process in question." *Id.* Second, courts consider whether the documents are "derived from or a necessary corollary of the capacity to attend the relevant proceedings." *Id.* In other words, the court must decide "whether the documents are necessary to understand the merits of the proceeding." *Id.* (quoting *Doe v. Lerner*, 688 F. App'x 49, 50 (2d Cir. 2017)). Once the court determines that the First Amendment presumption of access applies, it can only be overcome if the party seeking to seal demonstrates that that there is a "substantial probability of harm to a compelling interest" and if the court makes "specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 469 (quoting *Lugosch*, 435 F.3d at 120). "'Broad and general findings' and 'conclusory assertion[s]' are insufficient to justify deprivation of public access to the record." *Id.* (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)).

### B. The Redacted Brief and Sealed Exhibits Are "Judicial Documents"

Here, the Redacted Brief and Sealed Exhibits are unquestionably "judicial documents" to which the presumption of access under both common law and the First Amendment applies. *See New York ex rel. Khurana v. Spherion Corp.*, 15-cv-6605 (JMF), 2019 WL 3294170, at *1

7

(S.D.N.Y. Jul. 19, 2019). The Second Circuit has explained that documents filed with a court are deemed "judicial documents" when they are "relevant to the performance of the judicial function and useful in the judicial process." *Amodeo*, 44 F.3d at 145. Documents are "relevant to the performance of the judicial function" when they "reasonably have the *tendency* to influence a district court's ruling on a motion or in exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (emphasis in original). Accordingly, courts in this Circuit have explained that "[g]enerally, the presumption of access applies to all documents filed with the court." *Under Seal*, 273 F. Supp. 3d at 469.

In fact, just recently, the Second Circuit found that materials filed in connection with a summary judgment motion and various motions *in limine* qualify as judicial documents. In *Brown*, the court explained that "it is well-settled that documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Brown*, 929 F.3d at 47. In addition, the court found that motions *in limine* – including motions to compel testimony, to quash trial subpoenae, and to exclude certain deposition testimony – "at least on their face, call upon the court to exercise its Article III powers." *Id.* at 50. As a result, the *Brown* court held that the motions *in limine* were also judicial documents "subject to at least some presumption of public access." *Id.* Similarly, in *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511-12 (S.D.N.Y. 2015), the court concluded that exhibits filed in connection with *Daubert* motions constituted judicial documents, explaining that the "public interest in each is high." The Sealed Exhibits and Redacted Brief, therefore, are clearly judicial documents to which the presumption of access applies.

8

### C. Under The First Amendment, There Is A Strong Presumption of Access To The Sealed Exhibits and Redacted Brief

Under well-established Second Circuit precedent, the First Amendment presumption of access is "highest" when applied to "documents used by parties moving for, or opposing summary judgment." *Lugosch*, 435 F.3d at 123. These documents "should not remain under seal absent the most compelling reasons." *Id.* This is true regardless of whether the court actually relied upon the documents in resolving the motion for summary judgment. *Brown*, 929 F.3d at 48 ("[W]e have expressly rejected the proposition that different types of documents might receive different weights of presumption based on the extent to which they were relied upon in resolving [a] motion [for summary judgment].") (internal quotations omitted). "[T]he presumption of public access in filings submitted in connection with discovery disputes or motions *in limine* is generally somewhat lower than the presumption applied to . . . dispositive motions." *Id.* at 50. Although Plaintiff labeled the Redacted Brief as a response to motion *in limine*, the strongest First Amendment right of access still applies to it and the Sealed Exhibits. The Redacted Brief is inextricably linked to Plaintiff's opposition to Merck's summary judgment motion; he says so explicitly, noting in the opposition that the Redacted Brief is "hereby incorporated in this Response." Docket Entry No. 114 at 5. As Plaintiff therefore admits, the Redacted Brief and Sealed Exhibits are "necessary to understand" his opposition to summary judgment.[2] *Under Seal*, 273 F. Supp. 3d at 468. For these

---

[2] The mis-redacted sections of the Redacted Brief further underscore this point. For example, on Page 41 of the Redacted Brief, underneath the sub-heading "Etminan Report and Opinion are Predicated on a Reliable Methodology," redacted text explains that Plaintiff's expert's methodology reached conclusions similar to those reached by Merck's own internal studies:

> As noted above *Merck*—like Etminan—*observed a safety signal* establishing an association between ED and finasteride post-use. *Supra* at 7. Merck determined that the clinical data evidenced cases of persistent sexual dysfunction. *Id.* And, *Merck determined* the "*time to resolution . . . has not been determined.*" *Id.*

This portion of the brief quotes Sealed Exhibit 21. Because one of Merck's arguments in support of summary judgment was that Plaintiff's expert testimony should be excluded as unreliable and therefore Plaintiff could not prove causation, it is evident that the Sealed Exhibits closely relate to an issue raised in Merck's summary judgment motion.

9

reasons, in accordance with the First Amendment, the parties were required to articulate "compelling reasons" for keeping these documents under seal and the Court was obliged to make specific, on-the-record findings that these reasons could overcome the stringent public right of access.³

### D. The Court's Sealing Order Is Not An Adequate Substitute For The On-The-Record Findings Mandated By The First Amendment

Neither the parties nor the Court undertook the particularized showing to seal documents required by the First Amendment. Instead, prior to Merck's submission of its summary judgment and *Daubert* motions, the court issued a general order allowing the sealing of all exhibits in the first instance, even when the only justification for the sealing was a "generic assertion that the exhibits contain confidential information." *See* Order Granting Docket Entry No. 108.⁴

Courts in this Circuit have recently determined that orders like the one here – that seal documents without a particularized review of the documents – are impermissible. For example, in *Brown*, the District Court issued a sealing order that "disposed of the requirement that the parties file individual letter briefs to request sealing and prospectively granted all of the parties' future

---

³ Even if the Court finds that the First Amendment's heightened presumption of access in inapplicable here, under the common law, the presumption of access would still be extremely high. As explained, the sealed documents relate directly to the issues at the center of the motion for summary judgment. *See Turner Network Sales, Inc. v. DISH Network L.L.C.*, No. 17-cv-7499(RA), 2019 WL 147372, at *1 (S.D.N.Y. Jan. 9, 2019) (holding that the common law presumption of public access is "particularly strong . . . not only because the documents were submitted in connection with a motion for summary judgment, but also because the portions of the submissions that the parties seek to seal are critical to the Court's adjudication of that motion."). The Sealed Exhibits provide information showing that Merck's own employees knew that Propecia could cause persistent erectile dysfunction, which relates to whether Plaintiff's experts used reliable methodologies and whether Plaintiff can prove causation. Further, because doctors continue to prescribe Propecia and its generic equivalent, the Redacted Brief and Sealed Exhibits are "of legitimate interest to the public." *Bernstein*, 814 F.3d at 143. Thus, the sealed Exhibits "directly affect [the] adjudication" and play a "significant role in determining litigants' substantive rights." *U.S. v. Graham*, 257 F.3d 143, 153 (2d Cir. 2001) (citing *Amodeo*, 71 F.3d at 1049).

⁴ Notably, "[t]he mere fact that information is subject to a confidentiality agreement between litigants is not a valid basis to overcome the presumption in favor of public access to judicial documents." *Khurana* 2019 WL 3294170, at *1 (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-md-2543(JMF), 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015)); *Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086(JMF), 2012 WL 621746, at *2 (S.D.N.Y. Dec. 3, 2012) ("The consent of the parties is not a valid basis to justify sealing, as the rights involved are the rights of the public.") (internal quotations omitted).

sealing requests" and then denied the *Miami Herald's* subsequent motion to unseal documents. *Brown*, 929 F.3d at 46. On appeal, the Second Circuit faulted the District Court for its "failure to conduct an individualized review of the sealed materials," ordered documents related to dispositive motions unsealed, and remanded the case to the District Court to conduct this analysis as to other judicial documents. *Id.* at 51; *see also Khurana*, 2019 WL 3294170, at *2 ("A protective order authorizing the parties themselves to designate confidential material and to file such material under seal — without prior 'individualized review' and 'specific, on-the record findings' by the Court that such sealing or redaction is warranted — is inappropriate.").

Here, as in *Brown*, the order permitted the parties to seal documents **prior** to the Court conducting an individualized, document-by-document review of the sealing. And although this order – unlike the order in *Brown* – did contemplate that the Court would make a *post-hoc* determination about the appropriateness of sealing, there is no evidence that this review ever occurred. Even if it did, the order would still be unconstitutional because the presumption is one of "***immediate*** access." *Lugosch*, 435 F.3d at 126-27 (*citing Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) ("In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous… The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefits of public scrutiny and may have the same result as complete suppression.")).

Accordingly, because the Court's order stands in tension with the presumption of public access under the First Amendment and common law, it was improper and should be vacated.

### E.   Any Reasons That Could Be Proffered For Sealing Do Not Outweigh The Presumption of Openness

Even absent these errors, there could be no justification for sealing that could outweigh the public's robust First Amendment right of access to these documents.

The issues involved in the Redacted Brief and Sealed Exhibits are "manifestly ones of public concern and therefore ones which the public has an interest in overseeing." *United States v. Erie Cty., N.Y.*, 763 F.3d 235, 242 (2d Cir. 2014). For example, from the mis-redacted text, it is clear that the Sealed Exhibits contain information about whether and when Merck knew that Propecia could cause persistent erectile dysfunction. A redacted section on Page 4 of the Brief, underneath the sub-heading "Merck uncovers proof of persistent sexual dysfunction post-use and does nothing to alert consumers or doctors" discusses a clinical trial and states:

> Of the six patients who discontinued Propecia due to SAEs [Sexual Adverse Events], one patient's symptoms were not resolved 66 days after stopping the drug. Furthermore, seven other patients (out of the original 23, or about 30%) who completed the study continued to experience SAEs. Kaufman later conceded Merck did not know whether those symptoms ever resolved. *Id.* at 86:23-87:4.

In support of this quotation, the Redacted Brief cites to Sealed Exhibit 15, which the public still cannot see in its entirety.

The importance of these stunning revelations cannot be underscored. Last year alone, Propecia (or its generic version, finasteride) was prescribed over 1.6 million times in the United States. *See* Article at 4. Despite this litigation and evidence showing that insiders at Merck knew about the side effects of the drug, the general public is shielded by this Court's opaque order from learning of any information that contradicts the Propecia label. At least one doctor interviewed by Reuters indicated that he would have been more cautious in prescribing Propecia had he known about the information discussed in the Redacted Brief, and Mr. Pfaff's wife stated that her husband would not have taken Propecia had he known the duration of the potential side effects. *Id.* at 4, 9.

Mr. Pfaff's situation is not unique. Of the 5,000 men who reported sexual or mental health side effects from Propecia to the FDA between 2009 and 2018, 350 reported suicidal thoughts, and 50 committed suicide. *Id.* at 4. Members of the public, therefore, have a strong interest in reviewing the information contained in these Sealed Exhibits.

The parties did not – and cannot – offer any privacy interests that override the strong presumption of access. As a preliminary matter, the parties' privacy interests are ***particularly*** low here, given that Plaintiff has already fully disclosed the information contained in the Redacted Brief and, accordingly, partially[5] disclosed the information contained in the Sealed Exhibits. Indeed, courts in the Second Circuit have repeatedly held that a court cannot seal information once it has been publicly revealed. *See In re Application to Unseal 98 Cr. 1101(ILG)*, 891 F. Supp. 2d 296, 300 (E.D.N.Y. 2012) ("Any balancing of the interests here, however, would be academic as the information the Government and Doe seek to maintain sealed has already been publicly revealed; the cat is out of the bag, the genie is out of the bottle."); *Under Seal*, 273 F. Supp. 3d at 472 ("Although the scope of the confidentiality provision at issue is broader than this disclosure, the fact that aspects of [plaintiff's] involvement in the Book have been revealed to the public weighs against sealing and against a finding of irreparable harm.").

In addition, this is not a case in which the court must worry about "preserving the right of an accused to fundamental fairness in the jury selection process, the protection of attorney-client privilege, the danger of impairing law enforcement or judicial inefficiency, or the privacy interests of those who resist disclosure." *Brown*, 929 F.3d at 47 n.13 (citations and quotes omitted). This is a civil case, so there is no "accused" party, and the case has already settled, so there is no concern

---

[5] This partial disclosure of the Sealed Exhibits makes full disclosure all the more important – without full disclosure the public will be unable to critically assess the disclosed information. Merck admits as much, indicating to Reuters that portions of the Sealed Exhibits included in the Redacted Brief were "taken out of context." Article at 3.

13

in tainting the jury pool or creating judicial inefficiency.[6] Further, the mis-redactions in Plaintiff's Brief indicate that the Sealed Exhibits do not appear to implicate attorney-client privilege. To the extent the Sealed Exhibits do contain any personal or privileged information (that has not already been disclosed by the mis-redactions), they can still be provided to the public with narrow redactions for any such information. Finally, potential negative publicity to Merck that may result from the release of these documents is not enough to prevent their disclosure. *Cf. Under Seal*, 273 F. Supp. 3d at 470 ("[A] possibility of future adverse impact on employment or the celebrity status of a party is not a 'higher value' sufficient to overcome the presumption of access to judicial documents.").

## CONCLUSION

This is a case of tremendous importance that has been sealed without on-the-record findings explaining that sealing. The First Amendment precludes such an outcome. For the foregoing reasons, Reuters' motion to intervene should be granted, the Court should vacate its order allowing for the sealing of documents without specific, on-the-record findings, the redactions should be removed from the Redacted Brief, and the Sealed Exhibits should be unsealed.[7]

---

[6] While there are still some outstanding claims against Merck, the existence of these cases cannot override the presumption of access. In *Brown*, for example, the Second Circuit ordered documents related to Jeffrey Epstein to be unsealed despite the fact that it was well-known that the government was – and still is – investigating matters surrounding Epstein, and he was indicted on charges of sex trafficking mere days after the court released its decision.

[7] In addition, there are two sealed exhibits attached to Merck's Motion *in Limine* to Preclude the Expert Testimony of Plaintiff's Experts. *See* Docket. Entry No. 111, Exs. 7, 55. While the parties' joint motion (Docket Entry No. 108) may have offered reasons for the sealing of these documents, because that motion remains under seal and because the Court did not make on-the-record findings about these documents, they too should be unsealed.

14

Dated: New York, New York
September 12, 2019

          Respectfully submitted,

          DAVIS WRIGHT TREMAINE LLP

          By: */s/ Katherine M. Bolger*
              Katherine M. Bolger

          1251 Avenue of the Americas, 21st Floor
          New York, NY  10020-1104
          (212) 489-8230 Phone
          (212) 489-8340 Fax
          katebolger@dwt.com

          Gail Gove
          Thomson Reuters
          333 Bay Street, Suite 400
          Toronto, Ontario, Canada
          (416) 687-7500
          Gail.gove@thomsonreuters.com

          *Attorneys for Movant/Intervenor Reuters*