UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
IN RE PROPECIA (FINASTERIDE)                             :
PRODUCT LIABILITY LITIGATION                             :      Master File No.: 12-md-2331 (BMC)(PK)
                                                         :
THIS DOCUMENT APPLIES TO:                                :      Case No.: 1:12-cv-01876 (BMC)(PK)
                                                         :
PAUL DAWSON,                                             :
                                                         :
                        Plaintiff,                       :
                                                         :
            v.                                           :
                                                         :
MERCK & CO., INC. and MERCK SHARP &                      :
DOHME CORP.,                                             :
                                                         :
                        Defendants.                      :
---------------------------------------------------------- x

**REUTERS' OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO REUTERS' MOTION TO UNSEAL**

Katherine M. Bolger
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone:  (212) 489-8230
Fax:       (212) 489-8340
katebolger@dwt.com

Christopher G. Lee
THOMSON REUTERS
3 Times Square
New York, NY 10036
christopher.lee@thomsonreuters.com

*Attorneys for Movant/Intervenor
Reuters America LLC*

At the eleventh hour, Merck raises with this Court a two-month-old decision entered by Judge Preska of the United States District Court for the Southern District of New York—*Giuffre v. Maxwell*, 2020 WL 133570 (S.D.N.Y. Jan. 13, 2020)—and argues that this non-binding decision is "highly instructive" to the issues raised in Reuters' Motion to Unseal (ECF No. 121). But Judge Preska's holding in *Giuffre*—that documents attached to a motion that remained undecided at the time a case is settled cannot constitute "judicial documents"—oversteps the mandate provided to the District Court by the Second Circuit in *Brown v. Maxwell*, contradicts well-established Second Circuit precedent, and has already been rejected by other courts. Accordingly, it should not influence the Court's decision in this matter, and the documents filed under seal in this case should promptly be unsealed.

## ARGUMENT

I. **The *Giuffre* Holding Defied the Instructions of the Second Circuit in *Brown v. Maxwell***

As Merck explains in its Supplemental Brief, Judge Preska's decision in *Giuffre* is the latest in a long-running dispute about the propriety of sealing documents in a defamation action brought by an alleged victim of Jeffrey Epstein. That case settled in May 2017.

In 2018, after the news broke of Labor Secretary Acosta's role in the Epstein plea deal, the *Miami Herald* intervened in the case and requested that the court unseal documents attached to a motion for summary judgment and various other filings. Judge Sweet granted the media's motion to intervene but denied the request to unseal. *See Giuffre v. Maxwell*, 325 F. Supp. 3d 428 (S.D.N.Y. 2018). On appeal, the Second Circuit vacated Judge Sweet's ruling, required the unsealing of the summary judgment documents, and remanded the case to the District Court to make specific findings as to other documents. *See Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019).

On remand, Judge Preska issued her January 13, 2020 ruling with respect to unsealing these other documents.

While Merck briefly recognizes the Second Circuit's decision in *Brown*, it selectively quotes from it, mischaracterizing the crux of the holding. *See* Supp. Br. at 3-4. Read in its entirety, the Second Circuit's decision foreclosed Judge Preska's later determination that the sought-after documents were not "judicial documents," and her holding to the contrary was, therefore, erroneous.

*First*, as Reuters set forth in its Motion to Unseal, the Second Circuit held that documents attached to a motion for summary judgment were unquestionably judicial documents subject to the highest First Amendment presumption of access. *See Brown*, 929 F.3d at 47-48. Because there were no countervailing privacy interests that could outweigh this presumption, the court ordered the parties to unseal these documents. *Id.* at 48. *Second*, as to the remaining documents—court filings in connection with discovery disputes and motions *in limine*—the court noted that the analysis "is only slightly more complex." *Id.* at 49. It explained that, in order for a filing to constitute a "judicial document," it "must be relevant to the performance of the judicial function and useful in the judicial process." *Id.* As applied to the remaining sealed materials in the case, the court explained:

> All such motions, at least on their face, call upon the court to exercise its Article III powers. Moreover, erroneous judicial decision-making with respect to such evidentiary and discovery matters can cause substantial harm. Such materials are therefore of value to those monitoring the federal courts. Thus, all documents submitted in connection with, and relevant to, such judicial decision-making are subject to at least some presumption of public access.

*Id.* at 50. In other words, the court held that these documents *were* "judicial documents" and therefore subject to a presumption of access. *See id.* at 53 ("Materials submitted in connection with, and relevant to, discovery motions, motions *in limine*, and other non-dispositive motions are

subject to a lesser—but still substantial—presumption of public access."). Not once did the Second Circuit state that these documents lose their status as "judicial documents" merely because the case had been settled. At the same time, because the court held that these documents were subject only to the lesser common law presumption of access, it remanded the case to Judge Preska to determine the strength of the presumption as applied to each document and whether any countervailing privacy interests could overcome the presumption. *Id.* at 51. In holding that the documents were not "judicial documents" in the first place, Judge Preska's decision, therefore, exceeded the scope of the Second Circuit's remand. It should not be further endorsed by this Court.

## II. *Giuffre* Contradicted Well-Established Second Circuit Precedent

Not only did Judge Preska's decision misapply the Second Circuit's opinion in *Brown*, it also is contrary to Second Circuit precedent cases that have found that filings constitute "judicial documents" at the time they are filed, regardless of whether a court ever issues a decision based on the documents. In *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), for example, an intervening party requested that the court unseal documents attached to a motion for summary judgment prior to the court's decision on that motion. The district court held that it could not "rightly decide whether the documents are judicial documents until after it rules on the summary judgment motion" because only then would the court know whether the documents were used in the performance of Article III functions. *Id.* at 121. It noted, "it is always possible that the motions may be withdrawn or the case settled before the Court issues its decision." *Id.* On appeal, the Second Circuit explicitly rejected this contention, explaining that "by virtue of having been submitted to the court as supporting material in connection with a motion for summary

3

judgment," the documents "are unquestionably judicial documents." *Id.* at 123. It then ordered the documents unsealed.

Similarly, in *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016), the Second Circuit held that documents attached to a sealed complaint were "judicial documents" even though the case had settled on confidential terms a mere thirteen days after the complaint was filed. As the court explained, "[t]he fact that a suit is ultimately settled without a judgment on the merits does not impair the 'judicial record' status of pleadings." *Id.* at 140. This is because "the inspection of pleadings allows 'the public [to] discern the prevalence of certain types of cases, the nature of the parties to particular kinds of actions, information about the settlement rates in different areas of law, and the types of materials that are likely to be sealed.'" *Id.* (citing *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir.2004)); *see also DXC Tech. Co. v. Hewlett Packard Enter. Co.*, 2019 WL 4621938, at *1 n.2 (S.D.N.Y. Sept. 11, 2019) (holding that documents submitted in conjunction with petition to confirm arbitration award were "judicial documents" even though the award would not be opposed and the court would not need to litigate any issues).

The logic of *Lugosch* and *Bernstein* applies equally here. The documents attached to the parties' *Daubert* briefing were "judicial documents" at the moment they were filed with this Court, and they did not lose this status merely because the case settled without a decision on the motion. As the *Bernstein* court explained, the public still has an interest in understanding the nature of the arguments made in the motion (which can only be done by understanding the attached exhibits), what convinced the parties to settle the action prior to the Court deciding the motions, and whether the settlement amount was fair in light of the evidence.[1]

---

[1] As further confirmation, the Ninth Circuit recently adopted the explicit rationale of *Lugosch* and *Bernstein*. In *Courthouse News Services v. Planet*, 947 F.3d 581 (9th Cir. 2020)—decided four days after *Giuffre*—the Ninth

4

The Second Circuit's decisions in *Lugosch* and *Bernstein* stand for the principle that documents are "judicial documents" at the time of filing and do not lose this status merely because of a settlement. Merck's claim that *Guiffre* is instructive is simply incorrect. On the contrary, it is an outlier.

### III. Even if *Giuffrie* Were "Instructive," This Case Substantively Differs From *Giuffre*

Even if this Court chooses to credit Merck's contention and consider *Giuffre*, this case still differs from *Giuffrie* in at least one important respect. Namely, unlike in *Giuffre*, where the parties were able to settle their claims without judicial oversight of the settlement agreement, it appears that this Court was involved in managing the overall settlement of the Propecia multi-district litigation, which includes settlement of the *Dawson* matter. *See* 12-cr-02331. From what is available on the multi-district litigation's public docket, it appears that the Court approved a settlement plan in which it "retain[ed] jurisdiction over the terms of the settlement agreement," *see,* ECF Nos. 387, 390, appointed an allocation committee to allocate the settlement funds, *see* ECF No. 390, routinely asked about the status of the settlement, *see* ECF Order dated 5/15/2018, and even held a telephonic conference on the date that the *Dawson* litigation was dismissed, *see* ECF Minute Entry dated 9/7/2018. Because the Court was tasked with ensuring a "fair and reasonable" settlement of this matter, *see* ECF No. 387 at 3, it necessarily was required to consider the documents filed by the parties prior to the settlement, including the documents that Reuters now wishes to unseal. For this reason, even if the documents in *Giuffre* were not "judicial

---

Circuit examined at "what point in time" the First Amendment right of access attaches to a document filed with the court. *Id.* at 590. The answer, it held, is "immediately." *See id.* ("[O]nce documents have been filed in judicial proceedings, a presumption arises that the public has the right to know the information they contain."). As support, the court noted that "[s]ome civil complaints may *never* come up for judicial evaluation because they may prompt the parties to settle." *Id.* at 592 (emphasis in original). These documents are nevertheless "judicial documents" because "[t]he public still has a right to know that the filing of the complaint . . . influenced the settlement of the dispute." *Id.* at 592-93. In reaching this decision, the court relied on *Bernstein*, among other cases, to conclude that a judicial document need not form the basis of a judicial action to be subject to the right to access. *Id.*

5

documents," the sealed documents here were relevant to the performance of a judicial function—overseeing settlement—and therefore are "judicial documents" subject to the presumption of access.

### IV. Merck's Suggestion—That this Court Wait Until *Giuffre* Is Appealed—Should Be Rejected

In the alternative, Merck proposes that this Court stay the instant proceedings, in essence asking this Court to "wait and see" whether *Giuffre* is appealed to the Second Circuit and then wait further until the Second Circuit issues a ruling. *See* Supp. Br. at 8. This suggestion is outlandish—the public has been deprived of its First Amendment right to access the sealed documents since 2017, when the Court entered an order sealing all documents in the first instance without individualized findings on the record. *See* Reuters Mot. to Unseal at 10-11; *see also New York ex rel. Khurana v. Spherion Corp.*, 2019 WL 3294170, at *2 (S.D.N.Y. Jul. 19, 2019) ("A protective order authorizing the parties themselves to designate confidential material and to file such material under seal — without prior 'individualized review' and 'specific, on-the record findings' by the Court that such sealing or redaction is warranted — is inappropriate."). And, as Second Circuit courts have held on numerous occasions, the right of public access should be "immediate." *See Lugosch*, 435 F.3d at 126-27 (citing *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) ("In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous… The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefits of public scrutiny and may have the same result as complete suppression.")). There is no reason for this Court to further delay providing the public with its constitutional right of access, especially when Second Circuit precedent already makes clear that the *Giuffre* holding is in error.

6

Finally, it is worth noting that on February 13, 2020, McClatchy Newspapers, the parent company of the Miami Herald, filed for bankruptcy. There is no pending appeal of Judge Preska's *Giuffre* decision, and it is unclear under those circumstances whether any appeal will ultimately be made. As a result, the public—and the press, which often serves as its proxy—may very well be denied access to the materials at issue in *Giuffre*, despite having a First Amendment right to access them. This end result—the public being denied access to information to which it is entitled—is all too common when sealing orders are in place and has been the subject of reporting by Reuters. Courts, however, can and do play an important role as gatekeepers of the public's right to know by, among other things, unsealing materials in a timely manner consistent with the First Amendment. Delaying a decision on Reuters' motion—which is what Merck requests here—is inconsistent with the Court's gatekeeping role.

Accordingly, this Court should proceed with the telephonic hearing scheduled for April 9, 2020 and should timely issue an order based on the parties' briefing and arguments.

## **CONCLUSION**

The *Giuffre* decision disrupted a long line of cases recognizing that the public has the right to review documents filed with a court, regardless of the stage in the litigation in which the public asserts this right. This Court should not impede the public's fundamental constitutional right of access any further, and the *Giuffre* decision should not be controlling here. For the reasons identified in Reuters' Motion to Unseal, the Court should remove the already public redactions from Plaintiff's Opposition to Merck's Motion to Exclude Experts and should unseal the corresponding Sealed Exhibits.

Dated: New York, New York
      April 2, 2020

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Katherine M. Bolger*
    Katherine M. Bolger

1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
katebolger@dwt.com

Christopher G. Lee
Thomson Reuters
3 Times Square
New York, NY 10036
(646) 223-5748
christoper.lee@thomsonreuters.com

*Attorneys for Movant/Intervenor
Reuters America LLC*

8